**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| EDELMINO ACOSTA, JR., OLIVER A. MONTOYA and HUMBERTO FIGUEROA, | ) ) ) | |
| Plaintiffs, | ) | CIV. NO.: 1:08-cv-00089 |
| v. | ) ) | |
| HOVENSA, LLC, THE UNITED STEELWORKERS OF AMERICA and THE UNITED STEELWORKERS OF AMERICA, LOCAL CHAPTER 8526 | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Finch, Senior Judge

### I.    Introduction

THIS MATTER comes before the Court on Defendants United Steelworkers Union, United Steelworkers Local 8526 and Hovensa's (collectively "Defendants") Motion to Dismiss. Plaintiffs Edelmino Acosta, Jr., Oliver Montoya and Humberto Figueroa ("Plaintiffs") allege that Hovensa incorrectly promoted their coworkers over them in violation of their Collective Bargaining Agreement and that their Unions, the United Steelworkers Union and its local chapter ("Union Defendants"), violated their duty of fair representation by failing to pursue their grievance concerning these promotions against Hovensa.  Hovensa and the Union Defendants jointly seek dismissal of this lawsuit under Federal Rule of Procedure 12(b)(6) on the grounds that Plaintiffs have failed to state a claim under section 301 of the Labor Management Relations Act ("LMRA"), that their claims are time barred, that Plaintiffs have failed to plead that they

were injured by Defendants' actions, and that punitive damages are not available under section 301. Having examined the Complaint, briefs prepared by the parties, matters of which this Court may take judicial notice and taken this matter under advisement, the Court finds that Defendants' Motion to Dismiss must be GRANTED IN PART AND DENIED IN PART.

## II.    Facts

Plaintiffs work at the Hovensa oil refinery on St. Croix, United States Virgin Islands. (Complaint ¶¶ 6-8.)   Plaintiffs are members of the United Steelworkers Union and United Steelworkers Local 8526, a local division of United Steelworkers. (*Id*. ¶¶ 6-7.) The Unions represent employees, including Plaintiffs, at the Hovensa Refinery.   (*Id*. ¶ 6.)   The relationship between United Steelworkers and Hovensa is governed by a Collective Bargaining Agreement ("CBA").[1]   Relevant to this case, the CBA classifies Hovensa's work force into several levels, including Operator levels A, B and C. (CBA, Art. 16 & Appendix A.)   In this ranking, C is the lowest and A the highest level, and thus workers moving from C to B and from B to A are said to

---

[1] On a motion to dismiss, the Court "may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, [and] items subject to judicial notice." *Buck v. Hampton Tp. School Dist*., 452 F.3d 256, 260 (3d Cir. 2006). Plaintiffs allege that Defendants violated the CBA and refer to it throughout their complaint. (Compl. ¶¶ 1, 12, 16, 17, 34, 43.)  Defendants included a copy of the CBA with their Motion to Dismiss.  Because the CBA is integral to Plaintiffs' complaint and because the parties cite to it extensively throughout their briefs without objection, the Court will consider the CBA in determining whether Plaintiffs have sufficiently stated a claim.  *Buck,* 452 F.3d at 260; *see also Peter Bay Owners Ass'n, Inc. v. Stillman*, 57 F. Supp. 2d 192, 194 (D.V.I. 1999) (court may take judicial notice of documents to which no objections were made); *Government Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 449 (D.V.I. 1997) ("When ruling on a motion to dismiss, courts may consider undisputed documents relied upon by the claimant even if such documents are not attached to the claimant's pleading." (citing *Pension Benefit Guaranty Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993))).

be promoted. (CBA, Art. 16.)  When a permanent vacancy occurs in a non-entry level job classification, Hovensa is required to "post a notice of such job opening for a period of ten (10) calendar days." (CBA § 16.3; Compl. ¶ 12.)  Employees may then bid for that position within that ten day period. (Compl. ¶ 10, 12; CBA § 16.3.)

Article 16 of the CBA indicates that the factors for determining promotions are "[c]ontinuous service in the next lower job classification; [a]bility to perform the work; [p]hysical fitness; [and] [a]bsenteeism and tardiness." (CBA § 16.2.)  Under Section 16.4, when workers are equally qualified regarding ability, physical fitness, and absenteeism, the promotion will go to the worker who has the longest continuous service at the next lower level, not necessarily the employee who has had the most continuous service with Hovensa overall. (Compl. ¶ 12; CBA § 16.4.)  Once an employee's bid for an open B Operator position is accepted by Hovensa, the employee is "trained and when you pass the training you are then certified as an [sic] B Operator and it is at that time that you are paid as an [sic] B Operator." (Compl. ¶ 10; *see also* CBA § 16.6.)  Separate and apart from this method of promotion, "[t]here is an alternate way to become a B Operator which is working for seven (7) years and being certified on three (3) units and having acted as an A Operator on at least one occasion." (Compl. ¶ 11; *see* CBA § 16.9.)  An employee does not have to bid in order to be promoted in this fashion. (CBA § 16.9.)

Plaintiffs allege that two other Hovensa employees, Peter Williams and Eugene Freeman, were promoted to A Operator positions even though, on the basis of the "continuous service" factor as set forth in Article 16 of the CBA, those promotions should have first been offered to Plaintiffs. (Compl. ¶¶ 25, 30, 37.)  Williams was awarded "a bid for a B Operator position in the

3

West Refinery in 2006" but "never exercised the award of the bid, never went to work at the West Refinery and was never certified as a B Operator until February 14, 2008." (*Id.* ¶ 15.) Plaintiffs allege that Williams became a B Operator in February 2008 pursuant to the automatic seven year certification clause of the CBA. (*Id.* ¶ 17.) From 2006 through February 2008, "Williams continued to work as a C Operator at the East Power Utilities while being improperly listed a B Operator at West Refinery where he never worked." (*Id.* ¶ 19.) On October 6, 2006, Freeman was awarded a B Operator position "although the position was never posted as required by the CBA." (*Id.* ¶ 16.)

Prior to March 2007, all Plaintiffs were Hovensa employees serving as C operators. (Compl. ¶¶ 8-9.) On March 19, 2007, Hovensa awarded B Operators bids to Plaintiffs which were accepted by them; they were all then certified as B operators in September 2007. (*Id.* ¶¶ 9, 18.) In February 2008, Hovensa posted five A Operator vacancies. Plaintiffs, Williams and other employees applied for the open A Operator positions. (*Id.* ¶ 20.) In May 2008, Hovensa awarded 3 of the bids and retracted two; in June 2008, the Union "grieved" the two retracted bids. (*Id.* ¶¶ 21-22.) In June 2008, Plaintiffs learned that Williams and Freeman were next on the list to be promoted. Plaintiffs allege that "Williams was improperly given the position over Plaintiffs because HOVENSA mistakenly listed his certification as a B Operator as of September 18, 2006 instead of February 2008." (*Id.* ¶ 25.)

Plaintiffs asked the Union to bring a grievance against Hovensa on the basis that Williams had been improperly designated as a B Operator. (Compl. ¶ 27.) Plaintiffs spoke with Carlos Figueroa, the Union Representative, about their complaint who indicated that "he had to discuss the matter with the Union President and Steelworker representative Jerry Jackson before

a grievance could be filed." (*Id.* ¶¶ 27-28.)   "Figueroa, on behalf of the Union Defendants, refused to file a grievance and stated the problem was HOVENSA's fault for incorrectly classifying Williams." (*Id.* ¶ 29.)  Plaintiffs also complained to Figueroa that Hovensa had made Freeman a B Operator "without posting the position." (*Id.* ¶ 30.)  Again, Figueroa told Plaintiffs that he spoke with Jerry Jackson and that the Union refused to file a grievance. (*Id.* ¶ 31.)  Plaintiffs then spoke directly with Jerry Jackson who, on behalf of the Union, refused to file a grievance.  (*Id.* ¶ 32.)

Plaintiffs also "went to the Assistant Complex Manager for Hovensa, Mr. Paul Urban who reviewed the facts and agreed that the promotion was contrary to the contract and that Hovensa had not properly kept track of Williams' status and advised that Plaintiffs file a grievance through their Union so the matter could be rectified."  (*Id.* ¶ 34.)   Urban notified Hovensa's Human Resource department and asked that Williams' status be corrected. Hovensa's Human Resources refused. (*Id.* ¶ 35.)

Plaintiffs threatened to file a lawsuit unless the Unions agreed to file a grievance. (Compl. ¶ 36.)  The Unions refused.  (*Id.*)  Plaintiffs filed this lawsuit on October 1, 2008.  (*Id.*, p. 8.)  Plaintiffs ask for damages, punitive damages, pre and post judgment interest, attorney's fees and costs.  (*Id.* ¶ 41, 44; *Id.*, p. 8.)

## III.    Discussion

### a.    Sufficiency of the Pleading Standard For a Motion to Dismiss

The Supreme Court's recent decisions in *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), have significantly altered pleading standards. Under these decisions

> when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949-50); *see also Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in [plaintiff's] favor."); *McTernan v. City of York, Penn.*, 577 F.3d 521, 531 (3d Cir. 2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") (quoting *Iqbal*, 129 S.Ct. at 1949).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quoting *Iqbal*, 129 S.Ct. at 1949). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citing *Iqbal*, 129 S.Ct. at 1950). While the Court must determine whether the facts as pleaded state a plausible claim for relief, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a

recovery is very remote and unlikely." *Fowler,* 578 F.3d at 213 (quoting *Twombly,* 550 U.S. at 556). A district court may grant the motion to dismiss "only if, accepting all factual allegations as true and construing the complaint in the light most favorable to [plaintiff], [it] determine[s] that [plaintiff] is not entitled to relief under any reasonable reading of the complaint." *Capogrosso*, 588 F.3d at 184.

### b. Plaintiffs Have Sufficiently Pleaded "Hybrid" Section 301 Claims

Plaintiffs bring "hybrid" claims under section 301 of the LMRA, 29 U.S.C. §§ 159 and 185, alleging that Union Defendants violated their duty of fair representation in that they "arbitrarily failed to adequately investigate, process, present and argue Plaintiffs' legitimate grievance" and that Hovensa breached "the CBA and has failed to promote the Plaintiffs as required, under the terms of the CBA." (Compl. ¶¶ 1, 40, 43.) "A hybrid section 301 action is one in which a union member sues his or her employer for breaching its contractual obligations under the collective bargaining agreement and the union for breaching the duty of fair representation." *Beidleman v. Stroh Brewery Co*., 182 F.3d 225, 236 (3d Cir.1999) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-165 (1983)). Plaintiffs' section 301 claims are known as "hybrid" claims because they are "inextricably interdependent" in that "the plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa." *Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993). [2] "Such a hybrid action really

---

[2] "A party seeking to recover on a hybrid § 301 claim against the employer must prove both that the employer violated the collective bargaining agreement and that the union breached its duty of fair representation." *Jones v. United Parcel Service, Inc*., 461 F.3d 982, 994 (8th Cir. 2006). Both halves of the hybrid claim must be viable in order for a hybrid claim to proceed. Failure in

alleges that the process of collective bargaining has broken down." *Podobnik v. U.S. Postal Service*, 409 F.3d 584, 593 (3d Cir. 2005) (quoting *United Steelworkers v. Crown Cork & Seal Co.,* 32 F.3d 53, 58 (3d Cir.1994)).  While Plaintiffs must ultimately succeed on both halves of their hybrid section 301 claims in order to have any recovery, Defendants only challenge the duty of fair representation claim in their Motion to Dismiss.

A union has a duty under § 9(a) of the National Labor Relations Act ("NLRA") to fairly represent its members. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).  A union breaches this duty of fair representation when its conduct toward an employee is "arbitrary, discriminatory, or in bad faith." *Air Line Pilots v. O'Neill*, 499 U.S. 65, 67 (1991).  This standard may be satisfied by a showing in any one of these three categories.  *Id.*; *Morales-Vallellanes v. Potter*, 339 U.S. 9, 16 (1st Cir. 2003) (noting that these are "three separate levels of inquiry") (citing *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1302 (7th Cir. 1992)).  Here, Plaintiffs assert that Union Defendants acted arbitrarily in refusing to process their grievance. [3]

---

one is fatal to the whole. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 631 (6th Cir. 2009) ("Both halves are essential."); *Nemsky v. ConocoPhillips Co.,* 574 F.3d 859, 864 (7th Cir. 2009) ("[N]either claim is viable if the other fails.") (citation omitted).

[3] In their Motion, Defendants argue that "the Plaintiff must establish that the alleged conduct was wholly irrational **and** that there was a bad faith reason for acting in such an irrational matter." (Defs. Mot. 8) (emphasis in original).  For this proposition, Defendants cite an unpublished District of New Jersey case, *Asala v. United Water Resources*, 2008 WL 2946011, at *2 (D.N.J. 2008) which in turn cited to *Medlin v. Boeing Vertol Co.*, 620 F. 2d 957, 961 (3d Cir. 1980).  However, *Medlin* predates the Supreme Court's *O'Neill* decision which rejected the notion that a viable duty of fair representation claim based on "arbitrary" conduct also required proof of bad faith on the part of the union. See *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1302 (7th Cir. 1992) (holding that *O'Neill* overruled prior Seventh Circuit law requiring plaintiffs to establish union's bad faith in order to prevail in duty of fair representation actions); *Connor v. Crowley American Transport, Inc.*, 1994 WL 59365, at *9 n. 3 (E.D. Pa.1994) (noting that Third Circuit's bad faith requirement "appears to be at odds with the Court's holding in *O'Neill*.")

A union's action are arbitrary only if, "in light of the factual and legal landscape at the time of the union's actions," the union's behavior is so far outside a "wide range of reasonableness" as to be "irrational." *O'Neill*, 499 U.S. at 78-79. This is an "extremely deferential standard" that precludes courts from "substitut[ing] their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call." *Ooley,* 961 F.2d at 1302. "[M]ere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation." *United Steelworkers of America v. Rawson*, 495 U.S. 362, 372-73 (1990). Likewise "ordinary mistakes, errors, or flaws in judgment also will not suffice." *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 538 (6th Cir. 2003). However, while deferential, the Court must nonetheless objectively inquire into whether a union's actions are arbitrary. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003) (citation omitted).

"A union does not act arbitrarily simply because it does not pursue a grievance that it has decided lacks merit. This is true even if a judge or jury later determines that the grievance is meritorious. [citations]. A union owes a duty to all members of the bargaining unit, therefore the union has the affirmative duty not to press grievances which the union believes, in good faith, do not warrant such action." *Cross v. United Auto Workers, Local 1762*, 450 F.3d 844, 847 (8th Cir. 2006) (internal citations and quotations omitted) (finding that Union did not violate duty of fair representation in deciding not to prosecute employee's grievance further because "Union previously lost a similar arbitration involving workplace violence."); *see also Findley v. Jones*

---

*O'Neil* compels the conclusion that Plaintiffs need only show that the Unions acted arbitrarily to succeed on their claims.

*Motor Freight, Division Allegheny Corp.*, 639 F.2d 953, 958 (3d Cir. 1981) ("In processing grievances there are times when the interests of all the employees affected by given circumstance may not be harmonious."). However, a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion. *Goulet v. New Penn Motor Exp., Inc.*, 512 F.3d 34, 45 (1st Cir. 2008) (citing *Vaca,* 386 U.S. at 191); *De Arroyo v. Sindicato De Trabajadores Packinghouse*, 425 F.2d 281, 284 (1st Cir. 1970) (upholding breach of duty of fair representation verdict because, in part, union failed to properly calculate plaintiffs' seniority when processing grievance) *disapproved of on other grounds in Bowen v. U.S. Postal Service*, 459 U.S. 212, 220 n.8 (1983).

The question presented by Defendants' Motion to Dismiss is whether the Complaint pleads facts that, if true, show that "in light of the factual and legal landscape at the time of the union's actions," the Union Defendants' decision not to pursue Plaintiffs' grievance was "arbitrary." *O'Neill*, 499 U.S. at 78-79. Union Defendants argue that the Complaint does not state a cause of action for "arbitrary" conduct under section 301 because they had "a good faith and rational basis for disagreeing with the Plaintiffs' interpretation of the facts and contract." (Defs. Mot. 2.) They argue that the central dispute in this case boils down to a difference in interpretation of the CBA, *i.e.* whether an employee's seniority date in a pay classification runs from the date of the award or from the date the employer certifies the employee as a B operator or assigns the employee B operator work. (Reply 1.) Union Defendants maintain that the seniority date runs from the date of the award (either immediately or retroactively when certification is required) and not from the date the employee is certified or the date they are assigned work in the classification because there are often delays between an award of a bid and

certification and that Plaintiffs "offer no explanation why a Union would rationally agree to a provision that allows an employer to wipe out seniority in a classification by simply delaying certification or making work assignments outside the classification." (Reply 1, 6.) Union Defendants justify their refusal to file Plaintiffs' grievance on the grounds that to do so would "allow [Hovensa] to manipulate promotions by simply delaying an employee's certification or making work assignments." (Reply 1-2.) In essence, Union Defendants argue that Williams was justifiably promoted over Plaintiffs because his certification was delayed by Hovensa, and that it would be unfair to punish him (by promoting Plaintiffs over him) for acts outside his control.

The lynchpin of Defendants' refusal to pursue Plaintiffs' grievance is their fear that pursuing it would require that Article 16 of the CBA be interpreted to mean that "employees lose classification seniority, if certification is delayed." (Reply 7.) Thus, the key question for this Court is whether Williams' 2008 B Operator certification derived from or was related to his 2006 B Operator award. If the two are unrelated, there was no "delay in certification" and pursuing Plaintiffs' grievance would not force the Unions to adopt a position that allowed Hovensa "to wipe out seniority in a classification by simply delaying certification." (Reply 1-2.) Recognizing this, Defendants argue that Williams' B Operator certification in February 2008 "had to relate to his B Operator promotion in September 2006" because "it is [undisputed] that in February 2008 there was no posting for a B operator opening." (Reply 6.) Defendants appear to be relying on section 16.3 of the CBA which requires that all job vacancies be posted for 10 days to suggest that Williams' February 2008 certification (not alleged to have been posted) was for the bid that he was awarded in September 2006. However, nothing in the Complaint suggests that Williams' February 2008 certification in any way relates to his 2006 bid award. To the

contrary, Plaintiffs pleaded that Williams "never exercised the award of the bid, never went to work at the West Refinery . . . [and] became a B Operator pursuant to the provision regarding seven (7) years experience and certification in three (3) units" rather than through the training process. (Compl. ¶¶ 11, 15, 17.) The fact that there was no B Operator posting in February 2008 does not help Defendants because certification pursuant the seven year rule of section 16.9 of the CBA does not require posting. (CBA § 16.9 ("There shall be no bidding for promotion to Operators "B" in this manner.")) Moreover, it is reasonable to infer that the Unions were aware that Williams was certified as B Operator in 2008 through the seven year rule in light of the allegations that Plaintiffs spoke to them about their grievance five separate times. (*Id.* ¶¶ 27-32, 36.) *Capogrosso*, 588 F.3d at 184 (Court must make reasonable inferences in plaintiffs' favor on a motion to dismiss.)

Because Union Defendants' refusal to process Plaintiffs' grievance was based on an interpretation of the CBA inapplicable to the facts of the Complaint, Plaintiffs have plausibly alleged that the Unions acted arbitrarily in refusing to file their grievance. *Bache v. American Tel. & Tel.,* 840 F.2d 283, 291 (5th Cir. 1988) (holding that a union may "breach its duty of fair representation by rejecting an employee's interpretation of the collective bargaining agreement [if] the union's interpretation is itself arbitrary or unreasonable."); *Ehrenburg v. Outokumpu American Brass, Inc.*, 808 F.Supp. 973, 979 (W.D.N.Y. 1992) (declining to accept Union's justification for not pursuing grievance as rational as a matter of law in hybrid section 301 case because its application to facts of case was contested issue of fact.)

The lack of a rational explanation for Union Defendants' refusal to prosecute Plaintiffs' grievance is buttressed by Plaintiffs' allegations that Figueroa, the Union representative, told

them that "the problem was HOVENSA's fault for incorrectly classifying Williams." (Compl. ¶ 29.) This suggests that Williams' promotion was more of a clerical error than a delay in training. Defendants attempt to deflect this allegation as not indicative "of Mr. Jackson's position with respect to the alleged error in Williams' seniority date" and that it "fall[s] short of an 'admission' by the Union that Williams' seniority date was incorrect." [4] (Reply 5.) Regardless of whether Jackson, the Union president, agreed that Williams' seniority date was incorrect (an issue of fact not properly before the Court on Defendants' Motion to Dismiss), the allegation that the Union representative thought that Williams was "incorrectly classif[ied]" undermines Union Defendants' claims that their decision to not prosecute the grievance was due to a difference in interpretation of the CBA.

Plaintiffs also alleged that Hovensa's Assistant Complex Manager, Paul Urban, "agreed that the promotion was contrary to the contract and that HOVENSA had not properly kept track of Williams' status and advised that Plaintiffs file a grievance through their Union so the matter could be rectified." (Compl. ¶ 34.) When Urban contacted Hovensa's human resource department, it refused to make any changes. (*Id.* ¶ 35.) Defendants urge that the Court should infer from this that "a HOVENSA supervisor [dis]agreed with the Plaintiffs that Mr. Williams B operator seniority date should run from February 2008 and not September 2006." (Reply 5.) The position of Hovensa's upper management at the time Plaintiffs sought a grievance regarding Williams' and Plaintiffs' seniority statuses is an issue of fact that cannot be resolved on

---

[4] The Court need not determine whether this is an admission by Union Defendants. It is worth noting, however, that the CBA may provide the Union representative with the authority to determine whether to advance a grievance from Step 1 to Step 2. (See CBA § 24.3 ("Failing satisfactory settlement in Step 1, the Union representative *may* submit the grievance to the Department Manager or his designee . . .")) (emphasis added).

Defendants' Motion to Dismiss. That the official position of Hovensa's upper management may be material to the determination of whether the Unions' decision to not pursue the grievance was arbitrary lends further support for denying Defendants' Motion to Dismiss. *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002) (holding that motion to dismiss "should not [] be[] granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law.").

Defendants could ultimately be correct that, in situations where certification is postponed because of delays in training, Article 16 of CBA should be read to mean that seniority is retroactive to the date when the bid is awarded (and accepted). *See Deringer v. Columbia Transp. Div., Oglebay Norton Co.*, 866 F.2d 859, 864 (6th Cir. 1989) (upholding judgment for defendants on plaintiff's hybrid section 301 claim for failing to file a grievance because Defendants presented evidence that plaintiff's bump down on seniority list was "consistent with the CBA."). Or discovery might show that Williams' 2008 certification related to his 2006 bid award. However, these issues of fact cannot be resolved on this Motion to Dismiss. *Leamer,* 288 F.3d at 535 (motion to dismiss should not be granted if there is an issue of material fact). At this stage of the litigation, the Complaint pleads facts plausibly suggesting that the Defendants acted arbitrarily in refusing to pursue Plaintiffs' grievance.[5]

_____

[5] Because Plaintiffs have sufficiently pleaded facts plausibly showing that Union Defendants' refusal to prosecute their grievance regarding Williams' promotion was arbitrary, the Court need not also determine whether their refusal to process the grievance regarding Freeman was arbitrary. *Tompkins v. United Healthcare of New England, Inc.*, 203 F.3d 90, 93 (1st Cir. 2000) ("The complaint will survive as long as it pleads sufficient facts to warrant recovery on any cognizable theory of the case."); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (holding that motion to dismiss should be denied "if, in view of what is alleged, it can

### c. Plaintiffs Filed Their Claims Within the Statute of Limitations

Hybrid section 301 claims are governed by the six-month statute of limitations provision of § 10(b) of NLRA. See *DelCostello,* 462 U.S. at 172; *Podobnik*, 409 F.3d at 593. The six-month statute of limitations begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Hersh v. Allen Products Co., Inc*., 789 F.2d 230, 232 (3d Cir. 1986). However, when the section 301 claim is for failure to file a grievance – like those of the Plaintiffs – "the statutory period begins to run when the plaintiff receives notice that the union will proceed no further with the grievance." *Id*. (citations omitted); *Vadino v. A Valey Eng'rs*, 903 F.2d 253, 261 (3d Cir. 1990) (holding that statute of limitations does not run "until it was or should have been clear to the employee that the Union would not pursue the grievance.") Defendants' argument – that the statute of limitations began to run in 2006 or 2007 when the facts underlying the grievance might have been known to Plaintiffs – would necessarily require that Plaintiffs have filed their hybrid section 301 claims long before Union Defendants refused to file their grievance. Because the Unions' failure to file a grievance is a "condition precedent" to Plaintiffs' hybrid section 301 claims, the statute of limitations cannot have begun until Plaintiffs were aware that the Union would not pursue their grievance. *Vadino*, 903 F.2d at 261 (holding that hybrid section 301 action "could not be maintained until [plaintiff] could fairly allege that the Union refused to process his grievance.").

---

reasonably be conceived that the plaintiffs . . . could, upon a trial, establish a case which would entitle them to . . . relief.") (quoting *Twombly*, 127 S.C.t at 1969 n.8).

Here, the earliest the Complaint alleges that Union Defendants refused to file a grievance was on June 17, 2008. (Compl. ¶ 29.) The Complaint was filed on October 1, 2008, less than four months after the date that they first refused to prosecute the grievance. Accordingly, Plaintiffs filed their complaint within the six-month statute of limitations.

Even assuming that the statute of limitations on Plaintiffs' hybrid section 301 claims could have begun to run before Union Defendants refused to file the grievance, Defendants have not established that the Complaint shows Plaintiffs were aware or reasonably should have been aware of the facts underlying their grievance. *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Management L.P.* 435 F.3d 396, 400 (3d Cir. 2006) ("[A] statute of limitations defense is an affirmative one, and in order to undergird a dismissal, must appear on the face of the complaint."); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) ("If the [statute of limitations] bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."). The Complaint alleges that Freeman was awarded a B Operator position in October 2006 even though it was never posted as it should have been under the CBA. (Compl. ¶ 16.) Nothing in the Complaint indicates that Plaintiffs were aware of this promotion prior to June 2008 and it is reasonable to infer that Plaintiffs were unaware of this position as it was not posted. Similarly, nothing in the Complaint indicates that Plaintiffs were aware, prior to June 2008, that Williams had been awarded a B Operator bid in 2006, that he did not exercise it, or that he was being paid as B Operator despite never getting certified. The Court cannot infer from the Complaint that Plaintiffs were aware or should have

been aware of Williams' and Freemans' seniority status prior to June 2008.[6] *Capital Management L.P.,* 435 F.3d at 400; *Robinson,* 313 F.3d at 135.

### d.  Plaintiffs Have Sufficiently Alleged Causation

Defendants also move to dismiss Plaintiffs' claims on the grounds that they have failed to plead "sufficient facts that establish a plausible theory of causation (i.e. what would have happened in the absence of the alleged breach)."  (Defs. Mot. 13.)  Defendants acknowledge that Plaintiffs alleged that "they would have received a promotion 'but for' the incorrect listing of Mr. Williams on the seniority list" but that this claim is "insufficient to show injury."  (*Id.*)  Defendants explain that this is true because, in the "but for" world, "[h]ad Mr. Williams known that (as plaintiffs allege) he was not really awarded a B Operator position in September 2006, then, more likely than not, he would have bid for a B Operator position in March 2007" and received it over Plaintiffs.  (*Id.*)  Defendants also argue that Plaintiffs Montoya and Figueroa have not alleged that they were denied a promotion.  (*Id.*)

---

[6] Defendants cite to *Alleyne v. American Airlines*, 548 F.3d 219 (2d Cir. 2008), for the proposition that "the appropriate time for calculating when the limitations period is accrued is when the alleged error on the seniority list occurred and not when its consequences become most painful."  (Reply 12.)  *Alleyne* addressed the statute of limitations applicable to a Title VII employment discrimination lawsuit and is not helpful in determining when the statute of limitations begins to run in this hybrid section 301 case.  *Alleyne,* 548 F.3d at 220.  Furthermore, in *Alleyne*, the Plaintiff was aware of his "loss of seniority" two years before he filed his complaint.  *Id.* at 219.  The Court held that an employment discrimination cause of action accrued on the date the employee learns of the employer's discriminatory conduct.  *Id.* at 222. Here, in contrast, Defendants have not shown that Plaintiffs were aware of any "loss of seniority" prior to June 2008.

A hybrid section 301 claim requires that Plaintiffs "show that the union proceeded . . . in an arbitrary manner, and that its short-comings prejudiced the member's cause." *Findley,* 639 F.2d at 959; *see also Deboles v. Trans World Airlines, Inc.* 552 F.2d 1005, 1019 (3rd Cir. 1977) ("liability under the labor law must rest on proof that the unfair labor practice actually impinged upon the putative victims and caused them pecuniary damage.") (quoting *Western Union Telegraph Co. v. NLRB*, 113 F.2d 992, 997 (2d Cir. 1940)). Plaintiffs have alleged facts that plausibly show that Union Defendants' failure to pursue their grievance caused them injury. (See Compl. ¶ 37 ("As a result [of Defendant Unions' failure to file a grievance] Plaintiffs were not awarded the positions. Plaintiff Acosta should have gotten the position with the other Plaintiffs being directly behind him for the next position."); *Id* ¶ 46 ("As a proximate result of HOVENSA'S gross breach of the CBA and the union defendants gross breach of the duty of fair representation, Plaintiffs have lost substantial income, fringe benefits, seniority and other valuable job rights and will continue to suffer such losses.")). Whether Plaintiffs would not have been promoted even if Williams and Freeman had not been incorrectly certified as B Operators (the "but-for" world) is an issue of fact that cannot be resolved on a motion to dismiss. *Leamer,* 288 F.3d at 535.

Lastly, Plaintiffs Montoya and Figueroa did allege injury in that they should be ahead of Freeman and Williams on the seniority list. (Compl. ¶¶ 37, 46). Deprivation of seniority rights by a Union's failure to file a grievance is sufficient injury to sustain a section 301 suit. See *Ramirez-Lebron v. International Shipping Agency, Inc*., __F .3d__, 2010 WL 324531, at *3-4 (1st Cir. 2010) (holding that plaintiffs had "standing" to bring section 301 lawsuit to enforce seniority rights under CBA).

### e. Punitive Damages Are Unavailable Under Section 301

Defendants seek to dismiss Plaintiffs' claims for punitive damages. Plaintiffs argue that their claim for punitive damages is not technically a separate claim but a "demand for the relief sought." (Opp. 19.) However, a claim for punitive damages may be the target of a motion to dismiss. See *New York Marine & General Ins. Co. v. Tradeline*, 266 F.3d 112, 130 (2d Cir. 2001) (upholding district court's dismissal of punitive damages under 12(b)(6) motion); *Bhd. of Railway Carmen of United States and Canada v. Delpro Co*., 579 F.Supp. 1332, 1338 (D. Del. 1984) (granting motion to dismiss union employees' punitive damages claims against employer).[7]

In an action brought against a union by railroad workers under the Railway Labor Act, the Supreme Court held that "[punitive] damages may not be assessed against a union that breaches its duty of fair representation by failing properly to pursue a grievance." *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 52 (1979); *see also Deboles v. Trans World Airlines, Inc*. 552 F.2d 1005, 1019 (3d Cir. 1977) ("punitive damages have been consistently rejected in unfair labor practice cases under the National Labor Relations Act.") (collecting cases). The reason behind the bar on punitive damages is that the NLRA is "essentially remedial . . . general labor

---

[7] Some district courts have found that "Rule 12(b)(6) does not provide the procedural mechanism to strike a prayer for punitive damages. Rule 12(f) is the procedural vehicle used to strike the prayer for relief where such damages are not recoverable as a matter of law." *In re Mission Bay Jet Sports, LLC*, 2010 WL 144441, at *3 (S.D.Cal. Jan. 11, 2010) (citation omitted). However, Rule 12(f) authorizes a court to strike a punitive damages claim *sua sponte*. Fed. Rul. Civ. Proc. 12(f)(1). Out of concerns for judicial economy and because the Court would be authorized to strike the claim for punitive damages *sua sponte*, the Court will treat the challenge to Plaintiffs' punitive damages claim as if it were made in a motion to strike.

policy disfavors punishment, and the adverse consequences of punitive damages awards could be substantial." *Foust*, 442 U.S. at 52. As Plaintiffs claims arise under the NLRA, they cannot claim punitive damages against the Union Defendants.

The question remains as to whether punitive damages may be allowed against Hovensa. At least one district court in this Circuit has dismissed punitive damages claims against an employer in a Railway Labor Act case because "[t]o allow a threat of unpredictable punitive awards against employers, where unions sitting opposite them at the bargaining table are immune from such threats, would unfairly multiply the unions' arsenal of negotiating weapons . . . [and] inject an unsettling factor not now present in labor-management negotiations." *Delpro Co*, 579 F.Supp. at 1338. The Court finds this reasoning persuasive. Allowing a plaintiff to claim punitive damages against an employer for breach of the CBA while simultaneously insulating a union for failing to pursue a grievance against the employer for that breach could create perverse incentives for unions to ignore legitimate grievances in order to influence employers with the specter of punitive damages. The labor laws were designed "to facilitate collective bargaining and to achieve industrial peace," not thwart it. *Foust*, 442 U.S. at 47.

Furthermore, punitive damages are generally only allowed "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Acosta v. Honda Motor Co., Ltd.*, 717 F.2d 828, 834 (3d Cir. 1983) (citing Restatement (Second) of Torts § 908(2) (1979)); *In re Tutu Water Wells Contamination Litig.* 78 F.Supp.2d 436, 445 (D.V.I. 1999) ("Under Virgin Islands law, in order to be eligible for punitive damages, the plaintiff is required to show that the acts complained of were outrageous, done with evil motive or reckless indifference to [the plaintiff's] rights.") (citation omitted). Plaintiffs have not

pleaded that the Union Defendants' decision to not pursue their grievance or Hovensa's alleged breach of the CBA were done in bad faith or with an evil motive. Moreover, punitive damages "are not permitted merely for a breach of contract." Restatement (Second) of Torts § 908 cmt. b (1979). Accordingly, Plaintiffs have not pleaded facts sufficient to plausibly support a claim for punitive damages against any of the Defendants.

## IV.     Conclusion

For the foregoing reasons, the Court concludes that Plaintiffs have sufficiently pleaded facts to make their claim for relief under their hybrid section 301 claims plausible. However, the Court finds that Plaintiffs have not sufficiently pleaded a claim for punitive damages against Defendants. Accordingly, Plaintiffs' claim for punitive damages is stricken from their Complaint. An appropriate Order accompanies this Memorandum Opinion.

ENTER:

Dated: February 23, 2010                 _____/s/_____
                                          HONORABLE RAYMOND L. FINCH
                                          SENIOR U.S. DISTRICT JUDGE